## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ILLINOIS

```
-------------------------------------------------------------x
In re:                                  :   Chapter 11
                                        :
BOROWIAK IGA FOODLINER, INC.            :   Case No. 19-40699
                                        :
Debtor.                                 :
                                        :
                                        :
-------------------------------------------------------------x
```

### THIRD INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND (III) SCHEDULING A FURTHER HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)

Upon the continued hearing ("Continued Hearing) on the motion (the "Motion"), [ECF No. 4], of Borowiak IGA Foodliner, Inc., the debtor herein (the "Debtor"), seeking this Court's authorization, pursuant to section 363(c) of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), to use the Cash Collateral (as defined below) and, pursuant to sections 361 and 363 of the Bankruptcy Code, to provide adequate protection to the Secured Creditors (as defined below) for:  (i) the use of the Cash Collateral, (ii) with respect to any diminution in the value of the Secured Creditors' interests in the Prepetition Collateral (as defined below) other than Cash Collateral, the use, sale, lease, depreciation, decline in market price or other diminution in value of such Prepetition Collateral, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code; all as set forth in this Court's previously entered orders permitting interim use of Cash Collateral [ECF Nos. 26 and 35] (the "Prior Collateral Orders"), and it appearing to the Court that the Secured Creditors and the

2277538_2
2315839_1

Debtor have agreed to further use of cash collateral on the terms and conditions set forth in this Order, and this Court having found good and sufficient cause therefor, and

**IT FURTHER APPEARING THAT**:

A.      On September 17, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Illinois.  The Debtor is continuing to operate its businesses and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner and no official committee has been established in the Debtor's Chapter 11 case.

B.      This Court has jurisdiction over this Chapter 11 case and the Motion pursuant to 28 U.S.C. § 157(b) and 1334.  Consideration of this Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.      Pursuant to various supply agreements, loan agreements, security agreements and an intercreditor agreement executed and delivered in or about September, 2016 (collectively, the "Loan Documents") the Debtor acknowledges and agrees that it is indebted to, and has granted liens and security interests for the benefit of, SuperValu, Inc. ("SuperValu")  and Citizens National Bank (the "Bank"), and with SuperValu, collectively, the "Secured Parties") in, among other things, the Debtor's accounts, inventory, equipment and all products and proceeds thereof, including cash and cash equivalents (the "Prepetition Collateral"), which liens and security interests secure, according to the Debtor, prepetition obligations owed to SuperValu and the Bank in the approximate amounts of $3,513,250 and $3.352,000, respectively, such amounts being hereinafter referred to as the "Prepetition Obligations."

D.  The Debtor acknowledges and agrees that cash in the amount of $152,440 and inventory valued by it at $863,741 held on the Petition Date constitutes Prepetition Collateral or the proceeds of the Prepetition Collateral and, therefore, is or will become cash collateral of the Secured Creditors within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").  The Secured Creditors would object to the use by the Debtor of the Prepetition Collateral, including the Cash Collateral, except on the terms of this Order (or such other order that may be entered by this Court with the consent of the Secured Creditors).  In addition, the Secured Creditors are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection for:  (a) the use of the Cash Collateral, (b) with respect to any diminution in the value of the Secured Creditors' interests in the Prepetition Collateral other than Cash Collateral, including without limitation the use, sale, lease, depreciation, decline in market price or other diminution in value of such Prepetition Collateral, and (c) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code.

E.      Good cause has been shown for the entry of this Order.  Absent the use of the Secured Creditors' Cash Collateral, the Debtor has represented that it does not have sufficient available sources of working capital and financing to carry on the operation of its business.  Among other things, the Debtor represents that entry of this Order will minimize disruption of the Debtor's business and operations and permit it to make payroll and other operating expenses, maintain business relationships with  vendors and retain customer and vendor confidence by demonstrating an ability to maintain normal operations, and the Debtor further agrees that the use of the Cash Collateral will therefore help preserve and maintain the going concern value of the Debtor and its estate, and will enhance the prospects for a successful reorganization of the Debtor under Chapter 11 of the Bankruptcy Code.

F.  The Debtor has advised the Secured Creditors of its intention to close one of its three (3) operating stores (the "Mt. Carmel Store").  It is the Debtor's intention to liquidate the assets remaining in the Mt. Carmel Store and distribute the proceeds to the Secured Creditors in accordance with their interests in the assets liquidated, following a procedure to be approved by the Secured Creditors and commenced no later than the Continued Hearing Date, as defined in paragraph 11, below.

G.  The Debtor also advises that the Secured Creditors have negotiated at arms' length and in good faith with the Debtor regarding the Debtor's use of Cash Collateral to fund the administration of the Debtor's estate and continued operation of its business, and that the Secured Creditors have agreed to permit the Debtors to use their Cash Collateral for the period through the Termination Date (as defined below), all subject to the terms and conditions set forth herein, including the protection afforded a party acting in "good faith" pursuant to section 363(m) of the Bankruptcy Code.  Nothing herein, however, obligates either Secured Creditor to support any plan of reorganization or liquidation proposed by the Debtor or any other party.

H.  Based on the record presented to the Court at the Preliminary Hearing and at the Continued Hearing, the terms of the Debtor's use of the Cash Collateral appear to be fair and reasonable, and to reflect the exercise by the Debtor and its directors and officers of prudent business judgment consistent with their fiduciary duties.

I.  The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2).  The continued permission granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor.  This Court concludes that entry of this Order is in the best interest of the Debtor's estate and creditors.

J.    The Debtor and the Bank acknowledge and agree that SuperValu holds a properly perfected, first priority lien in and to all inventory up to a principal amount of $1,900,000, but  the Secured Creditors have not requested, and nothing herein shall therefore be deemed to constitute, a finding by the Court as to the validity or priority of the liens and security interests as between the Secured Creditors themselves or between the Secured Creditors, respectively, and the bankruptcy estate, such findings not being necessary at this time in order to provide adequate protection to the Secured Creditors collectively; however, the Debtor and the Secured Creditors further agree that the priority of the liens of the respective Secured Creditors as to Prepetition Collateral shall govern the priority of their liens and entitlements in and to the Adequate Protection Obligations, the Postpetition Collateral, the Cash Collateral and the Replacement Liens, as defined in this Order.

Based upon the foregoing agreements and conclusions, and upon the record made before this Court at  the Continued Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.    The Motion is granted on an interim basis.  The Debtor is hereby authorized to use the Cash Collateral during the period from October 23, 2019 (the "Continued Hearing Date") through and including the Termination Date for the operation of its business and costs and expenses related to this Chapter 11 case in accordance with the terms and conditions of this Order; provided that neither the Debtor nor any other party in interest shall be authorized to use the Cash Collateral to prosecute or investigate any claims or causes of action against any Secured Creditor.

2.    (a) Pursuant to sections 361 and 363(e), as adequate protection for, and to the extent of, any diminution in the value of the Secured Creditors' interest in the Prepetition

Collateral resulting from (x) the use of the Cash Collateral pursuant to section 363(c) of the

Bankruptcy Code, (y) the use, sale, lease, depreciation, decline in market price or other

diminution in value of the Prepetition Collateral (other than the Cash Collateral) pursuant to

section 363(c) of the Bankruptcy Code, and (z) the imposition of the automatic stay pursuant to

section 362(a) of the Bankruptcy Code (the amount of any such use of Cash Collateral together

with any such diminution in value of such other Prepetition Collateral shall be referred to

hereinafter as the "Adequate Protection Obligations"),  the Secured Creditors are hereby granted

(effective as of the Petition Date and without the necessity of the execution by the Debtor of

mortgages, security agreements, pledge agreements, financing statements or otherwise), valid

and perfected, replacement security interests in, and liens on (the "Replacement Liens") all of the

right, title and interest of the Debtor in, to and under all present and after-acquired property of

the Debtor of any nature whatsoever including, without limitation, all accounts, inventory and

cash contained in any account of the Debtor, and the proceeds of all causes of action, other than

causes of action (and proceeds thereof) arising under sections 544, 545, 547, 548 and 550 of the

Bankruptcy Code (the "Avoidance Actions") (collectively, with the proceeds and products of any

and all of the foregoing, the "Postpetition Collateral").  Said Replacement Liens shall be, as to

the Secured Creditors collectively, and reserving any finding as to the priority of any liens and

security interests between the Secured Creditors with respect thereto, as provided in paragraph J,

above,  (x) a first priority perfected lien upon all of the Postpetition Collateral that is not

otherwise encumbered by a validly perfected, non-avoidable security interest or lien on the

Petition Date, (y) a first priority, senior, priming and perfected lien upon (a) that portion of the

Postpetition Collateral that is comprised of the Prepetition Collateral and (b) Postpetition

Collateral subject to a lien that is junior to the liens securing the Prepetition Obligations and (z)

junior perfected lien upon all Pre and Postpetition Collateral, which is subject to any validly perfected, non-avoidable lien that would be senior to the Replacement Liens under applicable law.

(b)    As further adequate protection hereunder, the Debtor shall provide the following reporting to each Secured Creditor (the "Reporting Requirements"): (i) a weekly summary of funds expended to purchase inventory; (ii) a weekly summary of cash in the bank; and (iii) a weekly summary of accounts receivable with aging, and shall conduct its operations in accordance with the budget attached hereto as Exhibit "A" (the "Budget").  The Debtor shall also allow representatives of the Secured Creditors access to its records and business premises during business hours for the purpose of monitoring compliance with the terms and conditions of this Order. Such reports shall be provided by electronic mail to the person(s) designated in writing by each Secured Creditor and shall be attached to the monthly reports submitted by the Debtor to the Office of the United States Trustee.

(c)    As further adequate protection, given the proposed closure of the Mt. Carmel store,  the Debtor shall make weekly payments to Supervalu on account of its agreed first priority security interest in the Debtor's inventory and administrative claim under Section 503(b)(9) of the Bankruptcy Code in the amount of $3,000 per week, payable on Wednesday of each week, to be applied to the administrative claim of Supervalu**.**

(d)    Under the circumstances and based upon the Secured Creditors' consent, the adequate protection provided herein is reasonable to protect the interests of the Secured Creditors.  Notwithstanding any other provision hereof, the grant of adequate protection to the Secured Creditors pursuant hereto is without prejudice to the right of the Secured Creditors, either individually or collectively, to seek modification of the grant of adequate protection

provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtor or any other party in interest to contest any such modification.

3.    The Adequate Protection Obligations shall constitute expenses of administration under sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code (the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b) and 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, and any successor trustee or any creditor, in these Chapter 11 cases or, to the extent permitted by applicable law, any subsequent proceedings under the Bankruptcy Code.  No cost or expense of administration under sections 105, 503(b) or 507(b) or otherwise, including those resulting from the conversion of these Chapter 11 cases pursuant to section 1112 of the Bankruptcy Code, shall be senior to, or pari passu with, the Superpriority Claims of the Secured Creditors arising out of the Adequate Protection Obligations.

4.    Except as expressly set forth in this Order, the liens granted pursuant to this Order shall not be (i) subject to any lien that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any other lien under sections 363 and 364 of the Bankruptcy Code.  The Replacement Liens shall be prior and senior to all liens and encumbrances of all other secured creditors in and to such Postpetition Collateral granted, or arising, after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor).  The

Replacement Liens granted pursuant to this Order shall constitute valid and duly perfected security interests and liens, and the Secured Creditors shall not be required to file or serve financing statements, notices of lien or similar instruments that otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession or establishing control over any collateral, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens.  If, however, any Secured Creditor, in its sole discretion, shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm or continue perfection of such Replacement Liens, the Debtor is directed to cooperate with and assist in such process, the stay imposed by section 362(a) of the Bankruptcy Code is hereby lifted to allow the filing and recording of a certified copy of this Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of this Order.

5.     The Debtor's right to use the Cash Collateral shall terminate (the date of any such termination, the "Termination Date") on the earliest to occur of (x) the date of the further hearing on use of cash collateral set forth in paragraph 11 of this Order, unless extended by the Secured Creditors, and (y) upon written notice to the Debtor by:  (x) either of the Secured Creditors, after the occurrence and continuance of any of the following events ("Events of Default"):

    a.   Failure of the Debtor to make any payment as and when required by this Order or other failure to comply in any material respect with the terms of this Order;

    b.   The obtaining of credit or the incurring of obligations that are (i) secured by a security interest, mortgage or other lien on all or any portion of the Prepetition Collateral or Postpetition Collateral, which is equal or senior to any security

interest, mortgage or other lien of the Secured Creditors, or (ii) entitled to priority administrative status, which is equal or senior to that granted to the Secured Creditors herein;

c.  Failure of the Debtor to comply with the Reporting Requirements;

d.  Failure of the Debtor to comply with any other covenant or agreement specified in this Order;

e.  Any representation or warranty made by the Debtor in connection with the Reporting Requirements shall prove to have been incorrect in any material respect when made;

f.  The Debtor's Chapter 11 case shall be dismissed or converted to a Chapter 7 Case; or a Chapter 11 Trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed;

g.  The Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Debtor which have an aggregate value in excess of $100,000;

h.  An order shall be entered reversing, amending, supplementing, vacating or otherwise modifying this Order;

i.  The sale of all or any portion of the Prepetition Collateral or the Postpetition Collateral outside of the ordinary course of the Debtor's business without the consent of the Secured Creditors;

j.  A pleading shall be filed by the Debtor seeking, or otherwise consenting to, any of the matters set forth in paragraphs (f) through (i) hereof;

k.  The Debtor shall fail to adhere to the terms of the Budget such that the variations between budgeted and actual performance exceeds five percent (5%).  If an urgent, unanticipated and necessary expense or expenses not included in the Budget causes a variation of greater than 5%, the Debtor may spend up to $5,000 in the aggregate to address such expense or expenses  without being in violation of this provision;

l.  The Debtor fails to maintain inventory in the Mt Carmel Store of a value no less than 70% of the value of the inventory in the Mt. Carmel Store as of the Petition Date during the period prior to the liquidation of such inventory; or

m.  The Debtor fails to distribute the proceeds from the liquidation of the Mt. Carmel store to the Secured Creditors in accordance with their security and other interests in such proceeds.

The Debtor shall promptly provide written notice to the Secured Creditors (with a copy to the United States Trustee) of the occurrence of any Event of Default. Such notice shall be provided to the persons, and in the manner, designated in accordance with paragraph 2(b) of this Order.

6.      On the Termination Date, (i) the Debtor's right to use the Cash Collateral shall terminate, and (ii) the Adequate Protection Obligations shall become immediately due and payable, subject to the provisions of any Order with respect to such Adequate Protection Obligations entered by the Court. Notwithstanding the occurrence of the Termination Date, all of the rights, remedies, benefits and protections provided to the Secured Creditors under this Order shall survive the Termination Date.

7.      The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in this Chapter 11 case; (b) converting any of this Chapter 11 case to a Chapter 7 case; or (c) dismissing this Chapter 11 case.  If an order dismissing this Chapter 11 case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the Replacement Liens granted pursuant to this Order to the Secured Creditors shall continue in full force and effect, shall remain binding on all parties in interest notwithstanding such dismissal until the obligations secured thereby shall have been paid and satisfied in full and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the limited purposes of enforcing such Replacement Liens.

8.      Entry of this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which either Secured Creditor may have against the Debtor or third parties. The provisions of this Order shall be binding upon and inure to the

benefit of the Secured Creditors, the Debtor, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this Chapter 11 case as a legal representative of the Debtor or the Debtor's estate.

        9.     Pursuant to sections 105, 361 and 363 of the Bankruptcy Code, the Secured Creditors are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Order, and each is entitled to the protection provided to such entities under section 363(m) of the Bankruptcy Code.

        10.    The Debtor only shall be authorized to use (i) the Cash Collateral and (ii) the Prepetition Collateral or Postpetition Collateral only on the terms contained in this Order. Subject to the entry of a Further Order, the Debtors shall not assert, and hereby waive, any claim under section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation or disposition of the Prepetition Collateral or the Postpetition Collateral unless such claim is expressly consented to by the Secured Creditors, and no such consent shall be implied from any action, inaction or acquiescence by the Secured Creditors, from agreement to the terms of this Order or otherwise.

        11.    A further hearing on use of cash collateral is hereby scheduled for January 27, 2020 (the "Continued Hearing Date"), commencing at 9:00 a.m., in the United States Bankruptcy Court, 301 West Main Street, Benton, Illinois.

        Counsel for the moving party shall serve a copy of this Order by mail to all interested parties who were not served electronically.

ENTERED: December 19, 2019

                /s/ Laura K. Grandy
              ————————————————————
               UNITED STATES BANKRUPTCY JUDGE/3

\_\_/s/ Douglas A. Antonik_____
Douglas A. Antonik
Attorney for Borowiak IGA Foodliner, Inc.


\_\_/s/ Ray W. Vaughan_____
Ray W. Vaughn
Attorney for Citizens National Bank


\_\_/s/ Patrick Hewson_____
Patrick Hewson
Attorney for Supervalu